# Illinois Official Reports

## Appellate Court

*In re S.A.M.*, 2021 IL App (3d) 210066

| | |
|---|---|
| Appellate Court Caption | *In re* S.A.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Shanea P., Respondent-Appellant). |
| District & No. | Third District No. 3-21-0066 |
| Filed | July 16, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 18-JA-29; the Hon. Curtis S. Lane, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Emily Sutton, of Sutton Law & Mediation, P.C., of Macomb, for appellant. Jeremy Karlin, State's Attorney, of Galesburg (Patrick Delfino and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Daugherity concurred in the judgment and opinion.
Presiding Justice McDade concurred in part and dissented in part, with opinion.

## OPINION

¶ 1    The respondent mother, Shanea P., appeals the trial court's order finding her unfit and terminating her parental rights as to the minor, S.A.M.

¶ 2                                   I. BACKGROUND

¶ 3    A juvenile petition was filed on May 23, 2018. The petition alleged that S.A.M. (born August 23, 2017) was neglected due to an environment injurious to her welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2018)) and a dependent minor pursuant to section 2-4 of the Act (*id.* § 2-4). The petition alleged that the mother had previously been found unfit and her parental rights to two other children had been terminated in 2018. The petition also alleged that cocaine and hydrocodone had been found in the home with the minor, including some cocaine located in the pocket of sweatpants on the floor in a room where the minor, the mother, and the father were located. The minor was already in the custody of the father after the minor was born with opiates and the cannabis compound tetrahydrocannabinol (THC) in her system.

¶ 4    The dispositional order of August 21, 2018, found by stipulation that both the mother and the father were unfit due to substance abuse issues. The minor was adjudicated neglected and made a ward of the court. The dispositional order required that the mother and the father each obtain and maintain a legal and verifiable source of income, maintain housing that met minimal parenting standards, follow up on the recommendations of the identified service provider in regard to substance abuse treatment, cooperate with any requested urinalysis screens, and cooperate with all tasks designated in the client service plan. The mother was also ordered to cooperate with a mental health assessment and all recommendations in regard to counseling and mental health services.

¶ 5    In the permanency review hearing order dated July 30, 2019, the trial court found that the mother had made reasonable progress and/or efforts toward the goal of returning home within 12 months. However, in the permanency review hearing order dated January 14, 2020, the trial court found that the mother had not made reasonable progress and/or efforts and changed the permanency goal to substitute care pending determination on termination of parental rights due to failed and missed drug screens and the age of the case. On July 13, 2020, the State filed a petition to terminate the parental rights of the mother and the father. With respect to the mother, the petition alleged that she failed to make reasonable efforts and reasonable progress toward the return of the minor "during any 9-month period (August 2019-July 2020)." The fitness hearing was held on December 29, 2020.

¶ 6    At the hearing, Randy Aldridge, a caseworker at the Center for Youth and Family Solutions (CYFS), testified that he became the caseworker for the minor's case in April or May 2019. With respect to the mother and court-ordered services, Aldridge testified that the mother had not completed substance abuse or mental health treatment. Her housing and financial situation

met minimum parenting standards. Since August 2019 to the date of the hearing, Aldridge testified that the mother had failed to appear for drug screens on 44 occasions. Aldridge then reviewed his reports and testified that, between the dates of August 2019 and July 2020, the mother had 34 unexcused failures to appear for drug screens. The mother had completed several substance abuse evaluations, one as recently as November 2020. She successfully completed a month of inpatient substance abuse treatment and was discharged on October 3, 2019, but she was recommended for extensive outpatient treatment that she did not complete. The mother did have a mental health evaluation and was receiving counseling, but she was discharged for inconsistent attendance in September or October 2019. Aldridge testified that he had not made a referral for mental health counseling since July 2020. Aldridge testified that the mother participated in once a week visits with the minor and, while her visits were inconsistent, they had become more consistent. Aldridge reviewed the permanency review reports dated July 23, 2019, January 7, 2020, and June 30, 2020, which covered the period of time from January 2019 through June 23, 2020. Aldridge testified that the mother attended 25 out of 43 visits during the time frame covered by those reports.

¶ 7        During Aldridge's testimony, the trial court questioned the State regarding the time frame, since the petition alleged an 11-month time frame. The trial court allowed the State to conform its pleading to allege the 9-month period was from August 2019 to May 2020.

¶ 8        According to the January 7, 2020, permanency review hearing report, between August 7 and December 26, 2019, the mother failed to appear for drug screens on 13 occasions and was tested on 3 occasions. The mother tested positive for THC on two of those occasions and positive for amphetamines/methamphetamines on the third occasion. Also, the Department of Children and Family Services (DCFS) service plan filed January 21, 2020, indicates that the mother was arrested on August 9, 2019, at CYFS for having cocaine on her person. The June 30, 2020, permanency review hearing report indicates that between January 14 and March 17, 2020, the mother failed to appear for drug screens on eight occasions and had two positive tests. The mother tested positive for cocaine, THC, and methadone on February 11, 2020, and tested positive for cocaine, THC, and amphetamine/methamphetamine on March 9, 2020. Due to the COVID-19 pandemic, there was a testing gap, but then the mother had three unexcused failures to appear during the month of May 2020 and two unexcused failures to appear in June 2020.

¶ 9        As for mental health counseling, the January 7, 2020, permanency review hearing report indicates that the mother was discharged from mental health services on November 21, 2019, for nonattendance. The June 30, 2020, permanency review report states that the CYFS counselor was unwilling to provide mental health counseling to the mother until the mother received substance abuse treatment.

¶ 10        The January 7, 2020, permanency review hearing report states that since July 30, 2019, the mother had been provided with 18 weekly two-hour visits with the minor and the mother had attended 11 of those visits. Her four missed visits during inpatient treatment in September 2019 were made up with three-hour visits in November and December. The report indicates that, if the mother canceled, it was usually due to illness. Also, the mother and the father were visiting with the minor with the foster parents during this time frame. When the mother visited with the minor, the visits went well. The June 30, 2020, permanency review hearing report indicates that the mother attended seven of the eight visits prior to the visits being moved to Zoom due

to COVID-19. It does not indicate if the mother missed any of the Zoom visits, but the visits were cut short due to the minor's young age and attention span.

¶ 11    Jeanine Fox, a substance abuse counselor at Bridgeway, testified that the mother was referred to her for a substance abuse evaluation in April 2020 and the mother had been receiving substance abuse counseling since that date. The mother's attendance had been consistent. Fox testified that the mother was making solid progress, including abstaining from her drug of choice, which was opiate pills. Fox attempted to schedule at least one drug screen a month for the mother, when not shut down during the pandemic. Other than testing positive for THC, the mother had a positive result for a benzodiazepine, a medication for which she had a prescription. Fox testified that her organization followed a harm reduction policy, so she encouraged the mother to use less THC to cope, but since it was not the mother's drug of choice and was a legal substance, Fox did not think that affected the mother's overall substance abuse progress.

¶ 12    The mother testified that she lived with the father and that she had been at her job for almost a year. She completed a 30-day inpatient substance abuse treatment on October 3, 2019, but she did not immediately start outpatient treatment. She started outpatient treatment at Bridgeway in April 2020. The mother testified that she had some positive drug screens in February and March 2020, for cocaine and methamphetamine. The mother testified that she has a good relationship and a bond with the minor.

¶ 13    In finding the mother to be unfit, the trial court commented on the disagreement regarding the nine-month time frame, whether the relevant period was August 2019 through April 2020 or whether August would not be counted so the period would go through May 2020. The trial court found that the dates did not matter because they were both a 9-month window within the 11-month window alleged in the petition and, during either time frame, the mother had missed and had positive drug screens. The trial court concluded that the mother had failed to make reasonable efforts and failed to make reasonable progress toward the return of the minor when the minor had been removed from the home due to substance abuse issues and the mother continued to have missed drug drops and positive drug screens. The mother's parental rights were terminated on February 3, 2021, after a best interest hearing. The mother appealed the finding of unfitness.

## II. ANALYSIS

¶ 14

¶ 15    The mother contends that she cannot be found unfit for failure to make reasonable progress under section 1(D)(m)(ii) because the State failed to file and serve a pleading that specified the relevant nine-month period relied on for the finding of unfitness. The mother also contends that the trial court's findings that she failed to make reasonable progress and failed to make reasonable efforts were against the manifest weight of the evidence. The State contends that the trial court's finding that the mother was unfit was not against the manifest weight of the evidence.

¶ 16    Section 2-29 of the Act sets forth a two-step process for the involuntary termination of parental rights. *Id.* § 2-29(2). The first step is for the court to find, by clear and convincing evidence, that a parent is an unfit person as defined in section 1 of the Adoption Act (750 ILCS 50/1 (West 2018)). *In re M.I.*, 2016 IL 120232, ¶ 20. Section 1(D) of the Adoption Act defines an unfit person as "any person whom the court shall find to be unfit to have a child." 750 ILCS 50/1(D) (West 2018). If the parent is found unfit, the second step in the process is to consider

the best interest of the child. *M.I.*, 2016 IL 120232, ¶ 20. The termination of parental rights is an extraordinary measure; therefore, the State must prove its allegations of unfitness by clear and convincing evidence. *In re Michael M.*, 364 Ill. App. 3d 598, 606 (2006); 705 ILCS 405/2-29(2), (4) (West 2018). On appeal, we will only reverse the trial court's finding of unfitness if the finding was against the manifest weight of the evidence. *M.I.*, 2016 IL 120232, ¶ 21.

¶ 17      The order finding the mother unfit stated that the mother was unfit both for failing to make reasonable progress toward the return of the minor and for failing to make reasonable efforts to correct the conditions that were the basis for the removal of the minor during "any 9-month period (August 2019-July 2020)." Both are grounds for unfitness as defined in section 1(D)(m) of the Adoption Act:

> "Failure by a parent (i) to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act, or (ii) to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act of 1987 or dependent minor under Section 2-4 of that Act. If a service plan has been established as required under Section 8.2 of the Abused and Neglected Child Reporting Act to correct the conditions that were the basis for the removal of the child from the parent and if those services were available, then, for purposes of this Act, 'failure to make reasonable progress toward the return of the child to the parent' includes the parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication under Section 2-3 or 2-4 of the Juvenile Court Act of 1987. Notwithstanding any other provision, when a petition or motion seeks to terminate parental rights on the basis of item (ii) of this subsection (m), the petitioner shall file with the court and serve on the parties a pleading that specifies the 9-month period or periods relied on. The pleading shall be filed and served on the parties no later than 3 weeks before the date set by the court for closure of discovery, and the allegations in the pleading shall be treated as incorporated into the petition or motion. Failure of a respondent to file a written denial of the allegations in the pleading shall not be treated as an admission that the allegations are true." 750 ILCS 50/1(D)(m) (West 2018).

¶ 18      The mother contends that the State failed to comply with the last part of the above section with regard to the finding that she failed to make reasonable progress in that the State did not file with the court or serve her with a pleading that specified the 9-month period at issue. Rather, the petition to terminate her parental rights initially identified a 12-month time period (August 2019-July 2020), and the amended petition alleged a 10-month time period (August 2019-May 2020). The mother argues the failure to specify the 9-month time period prevented her from preparing a defense and, thus, prejudiced her. The State argues that the mother failed to file a posttrial motion including the issue, so she has forfeited it for review. Forfeiture aside, the State argues that the trial court properly allowed the State to conform its petition to reflect an appropriate nine-month period and the trial court specifically identified the time period it was considering, so the mother was not prejudiced by the amendment.

¶ 19 We find that the mother did not forfeit the issue for review. While the mother did not file a posttrial motion, she did raise the issue in the trial court by objecting that the petition to terminate her parental rights failed to specify a nine-month period. See Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb. 1, 1994) (failure to file a posttrial motion in a nonjury case does not limit the scope of review); see also *Elsener v. Brown*, 2013 IL App (2d) 120209, ¶ 53 (posttrial motion is not necessary to preserve issues in an appeal from a bench trial).

¶ 20 In light of our supreme court's decision in *In re S.L.*, 2014 IL 115424, we find that the State's petition was not deficient, since the wording "during any 9-month period (August 2019-July 2020)" complies with the statutory requirement that the notice must specify the nine-month period or periods relied on. 750 ILCS 50/1(D)(m) (West 2018). The petition set forth a specific time period that exceeded nine months, but which encompassed more than one nine-month period from August 2019 through July 2020.

¶ 21 The mother does not dispute that the State could properly use any of those months to form the basis of a nine-month period upon which to show that the mother failed to make reasonable progress toward the return of the minor. Instead, the basis of the mother's objection is that the time frame specified in the notice exceeded nine months and she was prejudiced because she did not know what time frame to focus on in preparing her defense. The mother further argues that she focused her argument on the time frame that the trial court excluded when it amended or conformed the pleadings near the end of the fitness hearing. However, since we find that the notice provision contained in the petition properly set forth more than one nine-month period, we find that the mother was given adequate notice of the time frames to consider when preparing her defense. In light of our determination that the mother received proper notice, we find that it was unnecessary for the trial court to conform the pleadings to the proof or amend the pleadings to encompass the correct nine-month period. In any event, we find that the allegations in the amended petition were sufficient to state a cause of action under section 1(D)(m)(ii) of the Adoption Act and inform the mother as to the nature of the neglect charge. The nine-month period that was discussed by the trial court and the parties, whether it included August 2019 and ran through April 2020 or began after August 2019 and ran through May 2020, was inclusive of the time frame alleged in the original petition. See *S.L.*, 2014 IL 115424, ¶ 24 (there may be more than one possible nine-month period from which the State could seek to prove unfitness). Both time frames occurred after the adjudication of neglect on August 21, 2018.

¶ 22 Alternatively, we find that the motion to conform the petition to terminate was timely since amending the pleadings to conform to the proof is permitted at any time prior to the entry of the judgment. See 705 ILCS 405/2-13(5) (West 2018); 735 ILCS 5/2-616(a) (West 2018); *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). The mother's attorney alleged prejudice in that the mother focused on the latter part of the time frame, but we find no prejudice in that the mother was aware of the time frame at issue and had the opportunity to defend against the allegation. *Contra In re C.C.*, 224 Ill. App. 3d 207, 216 (1991) (amendment adding an allegation of dependency at the close of evidence prejudiced the father because he never got the opportunity to rebut the allegation). Also, the mother's positive drug screens for cocaine in February and March 2020 were encompassed in either time frame.

¶ 23 Turning to the merits of the finding of unfitness, reasonable progress is measured by an objective standard based upon the amount of progress from the conditions that existed at the time custody of the child was taken from the parent toward the return of the child to the parent.

*In re D.T.*, 2017 IL App (3d) 170120, ¶ 17. Progress is measured by the parent's compliance with the service plans and court's directives in light of the conditions that gave rise to the removal of the child and other conditions which later become known. *Id.* With respect to the mother's compliance with the service plans and the court's directives, the mother had a sufficient home and a job. The mother's visits with the minor were appropriate, and the mother and the minor had a strong connection, although there was some testimony that the visits were inconsistent at the beginning of the subject time frame.

¶ 24    In this case, however, the minor was removed due to substance abuse problems in the home. During the relevant nine-month period, whether or not it includes the month of August 2019, the mother continued to struggle with a substance abuse problem. During that time, which began a year after the dispositional order of unfitness, the mother had 24 unexcused missed drug screens and 5 positive drug screens. The mother also spent 30 days in a residential treatment facility in September 2019. She still tested positive for cocaine in February and again in March 2020. The only negative drug screens for the mother that can be found in the record were during the last half of her residential treatment in September 2019. Although Fox testified that Fox was not concerned with the mother's positive THC results, because it was not the mother's drug of choice, Fox acknowledged that DCFS required the mother to have reduced or nonuse of THC and the mother was not making progress in that area. Any mental health counseling, after the mother was discharged for nonattendance in November 2019, was on hold pending substance abuse treatment.

¶ 25    Considering that the mother's substance abuse was the primary condition that gave rise to the removal of the minor, we find that the trial court's conclusion that the mother was not making reasonable progress due to her continuing drug use during the relevant time frame was not against the manifest weight of the evidence. Since parental rights may be terminated if one ground for unfitness is supported by clear and convincing evidence, we need not review the issue of reasonable efforts. See *M.I.*, 2016 IL 120232, ¶ 43; see also *In re S.H.*, 2014 IL App (3d) 140500, ¶ 28. Thus, since we are affirming the finding of unfitness and the mother did not appeal the best interest finding, we affirm the termination of the mother's parental rights to S.A.M.

¶ 26                                  III. CONCLUSION

¶ 27    The judgment of the circuit court of Knox County is affirmed.

¶ 28    Affirmed.

¶ 29    PRESIDING JUSTICE McDADE, concurring in part and dissenting in part:

¶ 30    The majority affirms the decision of the circuit court of Knox County finding respondent Shanea P. unfit and terminating her parental rights related to the minor, S.A.M. In arriving at its decision, the trial court found that the State had satisfied the notice requirement set forth in section 1(D)(m)(iii) of the Adoption Act by designating a 12-month cumulative period rather than specified nine-month periods as appears to be mandated by the statute.

¶ 31    Relying on the supreme court's decision in *S.L.*, 2014 IL 115424, the majority affirms that decision, finding that respondent could have identified two nine-month periods within the timeframe articulated by the State: August 2019 through April 2020 and November 2019

through July 2020. Because that is essentially the same result authorized by *S.L.*, I concur in that decision.

¶ 32 I write separately on this issue to express my hope that the supreme court will see fit to revisit its finding in *S.L.* and consider a different conclusion. As noted by the *S.L.* court, the issue raised by respondent in that case arose from a 2006 amendment to the Adoption Act, which provided:

> " 'Notwithstanding any other provision, when a petition or motion seeks to terminate parental rights on the basis of item (iii) of this subsection (m), the petitioner shall file with the court and serve on the parties a pleading that specifies the 9-month period or periods relied on. The pleading shall be filed and served on the parties no later than 3 weeks before the date set by the court for closure of discovery, and the allegations in the pleading shall be treated as incorporated into the petition or motion. Failure of a respondent to file a written denial of the allegations in the pleading shall not be treated as an admission that the allegations are true.' " *Id.* ¶ 19 (quoting 750 ILCS 50/1(D)(m)(iii) (West 2010)).

The plain language of the statute unambiguously expresses the intent of the legislature that, while there are still three weeks remaining in discovery, the State must "specify" the nine-month period or periods on which it will be relying to make its case for termination and that those specifically designated nine-month periods must, by incorporation, be part of the petition or motion for termination of parental rights. Rather than enforcing those requirements, *S.L.* holds that the State need not comply with them to properly maintain a termination proceeding.

¶ 33 Because the finding of the majority is consistent with the supreme court's analysis and therefore proper, I concur in that portion of the decision.

¶ 34 I dissent, however, from the finding on the merits that respondent had not made reasonable progress toward curing the problem (substance abuse) that led to the removal of the child from the home. As the majority notes repeatedly in its opinion, because of the exigencies arising from the COVID-19 pandemic, there were gaps in respondent's required compliance with tasks and in the timeliness of services that were offered to her. It was not until April 2020 that she was referred for outpatient substance abuse evaluation and treatment. One of the nine-month periods that can be extrapolated from the 12 months identified by the State ends in April 2020. However, as noted by the majority, a second identifiable nine-month period begins November 2019 and goes through July 2020. Focusing on this latter period, I would find that the trial court's finding and the majority's agreement that respondent had not made reasonable progress in addressing her substance abuse problem is against the manifest weight of the evidence. I do not disagree with the majority's recitation of her failed drug drops and other evidence that she continued to have problems related to misuse of drugs prior to April 2020. She had completed a 30-day inpatient substance abuse regimen in October 2019 and had tested positive for cocaine and methamphetamine in February and March 2020.

¶ 35 But the fundamental concept of progress is that "I was doing badly, and now I am doing measurably better." The testimony of Jeanine Fox appears to document such progress. She is the substance abuse counselor at Bridgeway to whom respondent was referred in April 2020 for evaluation and treatment. Her testimony, which is summarized by the majority (*supra* ¶ 11), was that respondent was consistent in her attendance, that she was abstaining from her drug of choice (opiate pills), that her monthly screenings were clean of drugs but for a medication prescribed for her and THC, which, seemingly pursuant to the counselor's advice, respondent

used for coping purposes. Although the goal of DCFS is for respondent to ultimately be completely free from THC, if the opinion of the counselor is that her achievement of freedom from the dangerous, deleterious, and illegal drugs would be facilitated by leavening with a drug now legal in Illinois, respondent should not be prejudiced by that aspect of her treatment. Fox characterized her as making "solid progress." The majority acknowledges that respondent has made positive, but not perfect efforts and progress in addressing other requirements imposed on her. I would find that respondent has made reasonable progress in dealing with the substance abuse which resulted in the removal of S.A.M. from her home.