2024 IL App (1st) 221428-U

FIFTH DIVISION
March 22, 2024

No. 1-22-1428

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In* re MARRIAGE OF | ) | |
| | ) | Appeal from the |
| JACQUELINE M. GOLDIN | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | No. 10 D 7010 |
| and | ) | |
| | ) | Honorable |
| NEIL M. MORGANSTEIN, | ) | Michael Forti, |
| | ) | Judge Presiding. |
| Respondent-Appellant. | ) | |

JUSTICE MIKVA delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court's order suspending father's overnight parenting time and limiting the parties to two weeks of summer vacation is affirmed. This court lacks jurisdiction to consider fee orders not included in the notice of appeal. Where father's fee waiver had not expired when orders imposing certain fees on him were entered, we remand for the trial court to evaluate whether those were court-ordered fees he was exempt from paying under section 5-105(a)(1) of the Code of Civil Procedure (735 ILCS 5/5-105(a)(1) (West 2018)). Father has failed to demonstrate that the other orders that are before us on appeal represent an abuse of discretion.

¶ 2    The parties to this action, Jacqueline Goldin and Neil Morganstein, were divorced in 2013,

with Ms. Goldin awarded sole custody of their only child, J.M. In the intervening years, Mr. Morganstein has sought to expand his parenting time and Ms. Goldin has sought to limit it, citing what she views as his increasingly problematic behavior and its negative effects on J.M.

¶ 3    In response to a motion filed by Ms. Goldin to limit Mr. Morganstein's overnight parenting time and a motion filed by Mr. Morganstein to increase his parenting time, on December 18, 2019, the trial court appointed an expert to evaluate the parties and J.M. and to advise it on this matter. Following a four-day hearing in late 2021 and early 2022, the court entered an order concluding that J.M.'s relationship with Mr. Morganstein was significantly impairing his emotional development. The court suspended Mr. Morganstein's routine overnight parenting time and, consistent with a prior order, ruled that the parties would each receive two nonconsecutive weeks of summer vacation with J.M. that did not interfere with his camp schedule or the start of school. Mr. Morganstein, now self-represented, appeals from this and other orders awarding Ms. Goldin fees, holding him responsible for a portion of the fees incurred by certain professionals involved in this case, and denying his motion for discovery sanctions. For the reasons that follow, we affirm in part and reverse in part.

¶ 4                              I. BACKGROUND

¶ 5                              A. Prior Litigation

¶ 6    The parties were married in 2008. Their only child, J.M., was born in 2009, and in 2010 Ms. Goldin filed for dissolution of the marriage. On April 26, 2013, the trial court entered a judgment of dissolution of marriage and a custody judgment awarding sole custody of J.M. to Ms. Goldin. The court followed the recommendations of Dr. Phyllis Amabile, whom it had appointed in 2012 to perform a custody and parenting evaluation and advise it on the matter pursuant to what was then section 604(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS

5/604(b) (West 2010)). At the time, J.M. was three years old and had experienced some developmental delays. The court agreed with Dr. Amabile that although both parties were committed parents who deeply loved J.M., Ms. Goldin was then better equipped to provide him with a stable environment and to manage his medical needs. In addition to various holidays and recesses from school, Mr. Morganstein was granted routine parenting time on Wednesday evenings from after school until 7 p.m. and on alternating weekends from Fridays after school through Monday mornings, when he would take J.M. to school. The parties were each granted two nonconsecutive weeks of summer vacation with J.M. in 2013 and, beginning in 2014, this would be increased to three nonconsecutive weeks.

¶ 7    Rejecting numerous contentions of error raised by Mr. Morganstein in his initial appeal, this court affirmed the judgment of dissolution and the custody determination in two separate orders. *In re Marriage of Goldin*, 2014 IL App (1st) 131674-U (Jan. 22, 2014); *In re Marriage of Goldin*, 2014 IL App (1st) 131674-U (Mar. 26, 2014). In a trio of consolidated appeals, we later affirmed the trial court's denial of Mr. Morganstein's petition to modify the judgment and the court's orders finding him in indirect contempt and requiring him to pay Ms. Goldin's attorney fees associated with the contempt proceedings. *In re Marriage of Goldin*, 2019 IL App (1st) 180788-U.

¶ 8                              B. Proceedings At Issue In This Appeal

¶ 9    Although Mr. Morganstein challenges a number of the trial court's orders and rulings made between fall 2019 and summer 2022, the central issue in this appeal concerns changes to his parenting time. He notes that on January 16, 2020, the court granted Ms. Goldin's petition to modify the custody judgment to eliminate his overnight parenting time on alternating Sunday nights. Mr. Morganstein was ordered at that time to return J.M. to Ms. Goldin's residence no later

than 7 p.m. on such nights, unless there was no school the next day due to a holiday. And on April 14, 2021, the court entered another order stating, among other things, that both parties were "to communicate with Mr. Levin [the guardian *ad litem* (GAL)] regarding their extended vacation schedule," which, notwithstanding the custody judgment, the court noted "[should] not exceed 2 weeks for each parent."

¶ 10    Ms. Goldin subsequently sought to terminate Mr. Morganstein's overnight parenting time altogether, claiming that his behavior was impairing J.M.'s emotional development. Mr. Morganstein, in turn, sought to expand his parenting time. The trial court appointed Dr. Alan Jaffee, a clinical and forensic psychologist, pursuant to what is now section 604.10(b) of the Act (750 ILCS 5/604.10(b) (West 2018)), to evaluate the parties and J.M and to advise the court on the question of Mr. Morganstein's parenting time. The court received evidence, including four days of testimony on October 22, 2021, February 8-9, 2022, and April 11, 2022, and continued the matter for a ruling on July 5, 2022. In the continuance order, the judge noted that the case had been "transferred to Calendar 52 for all further proceedings, except for the July 5, 2022 rulings" concerning parenting time, which he would make.

¶ 11    The court ultimately issued a seven-page memorandum opinion and order on August 23, 2022. The judge began by noting that he had reviewed the judgment for dissolution of marriage, the post-decree filings and orders, the exhibits, Dr. Jaffe's report, and the testimony of the parties, Dr. Jaffe, and the GAL. He noted that J.M., who was by then 13 years old, was described by his parents as "a bright, articulate, sweet, caring, and sensitive child," a "good student who [wa]s loved by his teachers," and "a sports enthusiast, although not a great athlete." He recounted Ms. Goldin's testimony at trial that "[f]or a long time, [J.M. had] strongly expressed his desire to reduce the time he spen[t] at [Mr. Morganstein's]" and had "repeatedly stated he [did] not want to sleep at his

father's house." "Most recently," according to Ms. Goldin, J.M. had "said that he [did] not want to go there at all," and complained of a stomachache when it was time for him to visit his father. The court found Ms. Goldin "to be a caring parent and a credible witness."

¶ 12    The court also relied heavily on the report and testimony of Dr. Jaffee. According to Dr. Jaffe, "[J.M.] appear[ed] to become intermittently dysregulated after spending overnights with [Mr. Morganstein]," due to "experiencing repetitive 'empathic failures' in interactions with [his father]." Specifically, during Dr. Jaffee's evaluation, J.M. said that Mr. Morganstein cursed in front of him, yelled in his face, left him at home alone, failed to provide him with healthy food, forced him to eat all of the food on his plate, compared him to other boys who were better at sports, criticized what his mother was feeding him and commented on his weight, would not allow J.M. to take any of his belongings out of the home, and kept a cluttered, messy, and disorganized home. J.M. told Dr. Jaffe that his father threatened him, that he "[did] not like anything really about [his] dad," and that he "[did] not want to go there at all." The judge noted that "[t]hese statements were unrefuted during the course of the trial." According to Dr. Jaffe, this "frequent emotional disruption often carrie[d] over into [J.M.'s] week." He noted, however, that overnight parenting time during extended vacations, when father and son were engaged in activities together, seemed to be less problematic.

¶ 13    Dr. Jaffe's opinion, based upon a reasonable degree of psychological certainty, was that Mr. Morganstein had "a number of psychological deficiencies with characteristics of various diagnoses," including "paranoia resulting from his lack of trust" and "narcissistic personality features," exemplified by "poor judgment, poor boundaries, lack of empathy and lack of insight." Mr. Morganstein was, in Dr. Jaffe's view, unable to understand the impact of his behavior on his son and routinely blamed others for his shortcomings. Although these circumstances did not rise

to the level of serious endangerment or involve physical abuse necessitating supervised parenting time, Dr. Jaffe believed Mr. Morganstein's behavior did "significantly impair [J.M.'s] emotional development." Dr. Jaffe believed that "increasing [Mr. Morganstein's] accessibility to [J.M] each week while reducing overnights" would "maximize the quality of time spent" and "contribute appreciably to the relationship" between father and son.

¶ 14    Joel Levin, the GAL, also testified at the hearing. The court noted that Mr. Levin had spoken to J.M. on a number of occasions and J.M. had "reiterated his strong opposition to overnight parenting time" with his father. Mr. Levin agreed with Dr. Jaffe that Mr. Morganstein's overnight parenting time should be suspended, subject to review at a later date. The court also noted that Mr. Levin had been involved in this case from its inception, was "extremely knowledgeable regarding the issues herein," and was someone the court found "to be very credible and persuasive."

¶ 15    Having considered this evidence in light of the factors set out in section 602.7 (governing the allocation of parenting time) and 603.10 (governing the restriction of parental responsibilities) of the Act, the court concluded that Mr. Morganstein "truly love[d] his son," but that "his relationship with [J.M.] was "rife with problems" that were having "a detrimental impact" on J.M. and "significantly impair[ing] his emotional development." With the exception of extended vacations, the court suspended Mr. Morganstein's overnight parenting time with J.M. In accord with that order, Mr. Morganstein's parenting time, outside of his vacation time each summer, is presently limited to various allocated holidays, Wednesdays from after school or camp until 7 p.m. and Sundays from 10 a.m. to 7 p.m.

¶ 16    The court also provided, "pursuant to [a] prior Order," that each party would receive "2 nonconsecutive weeks including overnights during summer break not to interfere with [J.M.'s] camp schedule" and to be exercised during any week except the week preceding the

commencement of school. In the event of a conflict, Ms. Goldin would have first choice in odd-numbered years and Mr. Morganstein in even-numbered years. This was a change the court had previously ordered, over Mr. Morganstein's objection, in response to Ms. Goldin's petition to reduce each parent's summer vacation by one week so that J.M. could attend a summer camp he was interested in attending.

¶ 17    The court also decided, over Ms. Goldin's objection, to appoint a parenting coordinator to assist the parties with any future disagreements that might arise concerning the terms of the court's orders. The court concluded by stating that "[a]ll other pending and future motions [would] be submitted to the Honorable Judge Silva presiding over Calendar 52" and, "[i]f necessary," the parties could submit to his coordinator "the appropriate transfer order."

¶ 18    Although the parties agree that the court entered a separate order the same day ruling on Ms. Goldin's petition for attorney fees and Mr. Morganstein's motion for sanctions, that order is not included in the record on appeal.

¶ 19                                    II. JURISDICTION

¶ 20    The trial court's August 23, 2022, order suspending Mr. Morganstein's overnight parenting time and incorporating the court's interim ruling limiting the parties to two nonconsecutive weeks of summer vacation with J.M. is appealable pursuant to Illinois Supreme Court Rule 304(b)(6) (eff. March 8, 2016), which provides an immediate appeal from any "custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the [Act]." Mr. Morganstein filed a timely notice of appeal from that order on September 20, 2022. We will consider the other rulings Mr. Morganstein has listed in his notice of appeal to the extent that they are incidental to this order.

¶ 21                                    III. ANALYSIS

7

¶ 22                                A. Motions Taken with the Appeal

¶ 23    We first rule on several motions filed in this court by Ms. Goldin that we took with the case. Having reviewed those motions now, in light of the appeal as a whole, we deny each of them.

¶ 24    On November 21, 2022, Ms. Goldin moved to dismiss or stay the appeal, arguing that Mr. Morganstein was improperly trying to avoid paying fees for the preparation of the circuit court record in this matter and should not be allowed to proceed with his appeal until those fees were paid. She supplemented that motion on December 2, 2022, seeking dismissal or stay of the appeal until after a ruling had been made on another petition for rule to show cause that she filed in the trial court that same day.

¶ 25    These are not proper arguments in support of dismissal. We are a court of review, and if Mr. Morganstein has engaged in improper behavior in the trial court, it is for that court to address the matter in the first instance. Ms. Goldin has also not convinced us that there is any compelling reason to stay this appeal pending the resolution of further disputes between the parties, particularly where Rule 304(b)(6) plainly provides for an immediate appeal from modifications to custody and parenting time judgments.

¶ 26    On March 31, 2023, Ms. Goldin filed a second motion to dismiss, arguing, among other things, that this appeal was frivolous; that due to restrictions placed on Mr. Morganstein in the trial court, he should not have been permitted to file his notice of appeal in this court without first seeking the trial court's permission; that Mr. Morganstein was perpetrating a fraud on the court by submitting an outdated waiver of fees; and that he could not succeed on appeal without a bystander's report, which the trial court had just refused to certify.

¶ 27    As discussed below in connection with Ms. Goldin's request for sanctions, we do not agree that Mr. Morganstein's appeal is frivolous or that he has engaged in a pattern of frivolous appeals.

And although we have noted in our analysis where the lack of a bystander's report precludes our consideration of a particular issue, we find it does not prevent us from reaching other issues raised by Mr. Morganstein.

¶ 28     We likewise deny Ms. Goldin's October 5, 2023, motion to strike a portion of Mr. Morganstein's reply brief, on the grounds that he was attempting to address a deficiency in the record by improperly relying on a portion of an exhibit that was attached to an unrelated filing. In deciding this appeal, we have only considered those arguments and supporting documents that are properly before us.

¶ 29     Ms. Goldin's motions are hereby denied.

¶ 30                               B. The Circuit Court's Jurisdiction

¶ 31     We next address Mr. Morganstein's argument that the trial court's August 23, 2022, memorandum and opinion must be vacated because it was improper for Judge Forti to issue a ruling in this case, which was assigned to Calendar 52, when he had been transferred from Calendar 52 to Calendar 61, on November 3, 2021. Mr. Morganstein cites authority stating that any order entered after a judge has been disqualified from a case, either by recusal or through a petition for substitution that should have been granted, is a nullity (see, *e.g. McIntosh v. Rosenblum*, 2023 IL App (5th) 200086-U, ¶ 20) and argues that all orders entered by Judge Forti in this matter after November 3, 2021, are void for lack of jurisdiction. Mr. Morganstein acknowledges that he did not make this argument in the trial court but notes that forfeiture "is a limitation only on the parties" and that this court may "decide any issue as long as the record contains facts sufficient for [its] resolution." *Ward v. Community Unit School District No. 220*, 243 Ill. App. 3d 968, 974 (1993).

¶ 32     We will address this argument despite the fact that it was never raised below. Mr. Morganstein presents this as a challenge to the trial court's subject matter jurisdiction, which may

be raised at any time. *Tully v. McLean*, 409 Ill. App. 3d 659, 665 (2011). However, we reject any suggestion that Judge Forti lacked jurisdiction to enter the order challenged on appeal.

¶ 33    The transfer of a matter from one calendar to another is a matter of administrative convenience for the circuit court that is not at all the equivalent of a recusal or disqualification. Such a transfer has no impact on the court's jurisdiction. *See In re Marriage of Devick*, 315 Ill. App. 3d 908, 913 (2000) (noting that "[t]he allocation of judicial responsibilities to various divisions of a circuit court does not impose barriers to jurisdiction but rather reflects a concern for administrative convenience"). General Order No. 1.3(a) (eff. Aug. 1, 1996) provides that "any action may be assigned to any judge or associate judge of the Circuit Court of Cook County for hearing or trial, regardless of the department, division or district in which the case was filed or to which the judge is regularly assigned." There is no jurisdictional issue—Judge Forti had jurisdiction as a circuit court judge to enter this order.

¶ 34    There was also no abuse of the administrative rules governing the assignment of cases. Within the Domestic Relations Division, cases are randomly assigned to trial calendars and judges are assigned to teams and to calendars within teams by the Presiding Judge of that division (see General Order No. 15.3, 3.1). Where one judge is unavailable, another judge may hear a matter in that judge's case (General Order No. 15.3, 3.4 (eff. Oct. 24, 1986)). While we are aware of no specific order addressing a judge's retention of a portion of a case after assignment to a new calendar, these general orders recognize that judges can hear and decide matters in cases that are not assigned to them. We have no question that a domestic relations judge assigned to a new calendar may rule, as Judge Forti did here, on a matter in which he or she received significant testimony and evidence before taking over that new calendar.

¶ 35            C. Changes to Mr. Morganstein's Parenting Time

¶ 36    Mr. Morganstein's primary contention on appeal is that the trial court erred in suspending his routine overnight parenting time and reducing the parties' summer vacation time. Both rulings were directed to the allocation of parental responsibilities and specifically Mr. Morganstein's parenting time. Section 602.7 of the Act concerns the allocation of parental responsibilities. 750 ILCS 5/602.7 (West 2020). It provides that parenting time must be allocated according to the child's best interests and sets out a list of nonexclusive factors that must be considered in making that determination. *Id.*

¶ 37    Section 603.10(a) of the Act, governing the restriction of parental responsibilities, provides that following a hearing, "if the court finds by a preponderance of the evidence that a parent engaged in any conduct" that either "seriously endangered the child's mental, moral, or physical health" or "significantly impaired the child's emotional development," the court "shall enter orders as necessary to protect the child," including "a reduction, elimination, or other adjustment of the parent's decision-making responsibilities or parenting time, or both ***." 750 ILCS 5/603.10(a)(1) (West 2020). It is the burden of the party seeking to modify parenting time to prove that this standard has been met. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 56.

¶ 38    Adjustments to parenting time made under section 603.10 involve a two-step process. *Id.* ¶ 58. The trial court must first make a factual determination that the preponderance of the evidence demonstrates the parent has engaged in the conduct in question. *Id.* (citing 750 ILCS 5/603.10(a) (West 2020)). We will reverse the trial court's factual findings only where they are against the manifest weight of the evidence, *i.e.*, where "upon review of the entire record, the opposite conclusion is clearly evident." *Id.* ¶ 59. The court must then "exercise its discretion in selecting the appropriate restrictions to parenting responsibilities to provide for the child's safety and welfare." *Id.* ¶ 58 (citing 750 ILCS 5/603.10(a)(1)(a)(9) (West 2020)). That is a decision this

court will not reverse absent an abuse of discretion, *i.e.*, where "no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Id.* ¶ 61.

¶ 39    Here, the trial court heard four days of evidence, including the testimony of the parties and the testimony and recommendations of Dr. Jaffe, who was appointed pursuant to section 604.10(b) of the Act (750 ILCS 5/604.10(b)(West 2020)) to assist the court in determining J.M.'s best interests. The court also heard from Mr. Levin, the GAL, who agreed with Mr. Jaffe's recommendations and whom the court noted had been involved in this case since its inception and was familiar with the parties and their relationships with J.M. The court considered the factors set out in section 602.7 (750 ILCS 5/602.7 (West 2020)) and the requirements in section 603.10 (*Id.* § 603.10) of the Act and determined that Mr. Morganstein's behavior was significantly impairing J.M.'s development. With the exception of extended vacations, the court suspended Mr. Morganstein's overnight parenting time.

¶ 40    Mr. Morganstein takes issue with many aspects of the proceedings leading to this ruling, and with the trial court's reliance on Mr. Jaffe's report. He urges us to find that, as a result of these purported irregularities, Ms. Goldin did not show by a preponderance of the evidence that his behavior significantly impaired J.M.'s development.

¶ 41    Ms. Goldin argues that we cannot decide this issue where Mr. Morganstein has failed to ensure that certain documents, including Dr. Jaffe's full report, were included in the record on appeal. He cannot now attach them to his appendix, she insists, and asks this court to strike those portions of his appendix containing documents not found in the record.

¶ 42    Ms. Goldin is correct both that "[t]he appellant bears the responsibility of providing a complete appellate record for review" (*In re Marriage of Sharp*, 369 Ill. App. 3d 271, 274 (2006)) and that "parties cannot use briefs and appendices to supplement the record" (*In re Parentage of*

*Melton*, 321 Ill. App. 3d 823, 826 (2001)). In deciding this appeal, we have ignored any improperly appended documents.

¶ 43    As Mr. Morganstein points out in his reply, however, portions of Dr. Jaffe's report—including his summary of the case and his recommendations that the trial court relied on—do appear in the record as attachments to other filings. Mr. Morganstein's arguments on appeal, moreover, are not directed at the contents of Dr. Jaffe's report but rather center on Dr. Jaffe's independence and credibility. We can consider those arguments even without Dr. Jaffe's complete report. See *Dubey v. Abam Building Corp.*, 266 Ill. App. 3d 44, 46 (1994) (noting that "an incomplete record does not preclude a reviewing court from determining whether a trial court's findings or rulings are correct where that determination can be made from the incomplete record presented"). Thus, we reject Ms. Goldin's argument that we should refuse to decide this issue and we address Mr. Morganstein's arguments as to why his overnight parenting time should not have been suspended.

¶ 44    Mr. Morganstein's primary argument is that Dr. Jaffee, whom the trial court clearly relied on, was not an impartial and independent evaluator but was in fact working to advance Ms. Goldin's interests. However, the record in this case demonstrates both that the role Dr. Jaffee played in this case was consistent with the Act and that the trial court's decision to rely on his testimony was appropriate.

¶ 45    Section 604.10(b)of the Act provides that "[t]he court may seek the advice of any professional, whether or not regularly employed by the court, to assist the court in determining the child's best interests." 750 ILCS 5/604.10(b) (West 2020). Under this subsection, the court will order the professional's costs and fees to be "paid by one or more of the parties, subject to reallocation in accordance with subsection (a) of Section 508." *Id.* Subsection (c) provides that a

party's own retained professional, at that party's expense unless otherwise ordered by the court, may also evaluate the child. *Id.* § 604.10(c). Here, the trial court's order of December 18, 2019, made clear that Dr. Jaffe was appointed by the court "to evaluate the parties and the minor child *pursuant to 750 ILCS 5/604.10(b)* on the limited issue of modifying parenting time" (emphasis added), and that Dr. Jaffe's retainer and fees were to be "equally divided by the parties subject to further allocation by the court."

¶ 46    Mr. Morganstein points to the fact that, at various points in this years-long litigation, Ms. Goldin moved the court to appoint Dr. Jaffe to evaluate Mr. Morganstein under Illinois Supreme Court Rule 215(a). That Rule permits the court to order a party to submit to examination by a licensed professional where that person's physical or mental condition is in controversy. Ill. Sup. Ct. R. 215(a) (eff. Mar. 28, 2011). The record does not indicate that Dr. Jaffe ever evaluated Mr. Morganstein under Rule 215(a). However, even if he had, that would not establish that Dr. Jaffe was biased or that he ever served as anything but the court's own appointed expert in this matter.

¶ 47    Mr. Morganstein makes several other arguments, contending that each is a basis upon which we should find that Dr. Jaffe was not neutral. He claims that Dr. Jaffe was involved in changing answers to Ms. Goldin's evaluation responses to conceal the nature of her romantic relationships, that Dr. Jaffe concealed J.M.'s journal entries from Mr. Morganstein in discovery because they were actually fabricated by Ms. Goldin, and that Dr. Jaffe relied in part on hearsay and unsubstantiated statements in arriving at his conclusions. All of these arguments go directly to Dr. Jaffe's credibility. However, this is an area where we must generally rely on the trial court. "[A] trial court is in the best position to determine a witness's credibility, and a reviewing court will not overturn a credibility finding unless it is against the manifest weight of the evidence." *In re Marriage of Blume*, 2016 IL App (3d) 140276, ¶ 31.

14

¶ 48   This case is a prime example of one in which we should defer to the trial judge's credibility findings. The judge in this case was familiar with the parties and their involvement with J.M. He concluded that Dr. Jaffe's findings were correct and that his recommendations were sound. The GAL, who the judge noted had been involved in this case since its inception and whom he separately found to be "very credible and persuasive," likewise agreed with Dr. Jaffe. "This court will not substitute our judgment for that of the trial court in determining the credibility of expert witnesses." *John Crane Inc. v. Allianz Underwriters Insurance Co.*, 2020 IL App (1st) 180223, ¶ 33. Mr. Morganstein's doubts and suspicions simply do not establish that the trial court's decision to believe Dr. Jaffe regarding the impact that overnights with Mr. Morganstein had on his son was against the manifest weight of the evidence. And, contrary to what Mr. Morganstein suggests in his reply brief, a finding of abuse—which we agree was never made here—is not required for the court to alter parenting time under section 603.10 of the Act.

¶ 49   Mr. Morganstein's other arguments are simply not supported by the citations he makes to the record in this case. He argues that Ms. Goldin's lawyer engaged in improper *ex parte* communications with the trial court, but what he points to are two e-mail exchanges on which he was copied. Moreover, these emails were generally for the purpose of providing the court courtesy copies and scheduling motions for argument. Ms. Goldin's lawyer did ask the court at one point to clarify something, and the judge responded that he "decline[d] to make those decisions outside of the courtroom, zoom or otherwise," and directed the lawyer to notice up a motion for the next court date if there was something he wanted the court to address. These were not improper *ex parte* communications.

¶ 50   Mr. Morganstein also contends that the limitations the trial court put on the cross examination of Dr. Jaffe denied him due process. The court granted a motion *in limine* made by

Ms. Goldin to prevent Mr. Morganstein from testifying or cross-examining witnesses about a pre-decree report prepared in 2012 by the court's expert at that time, Dr. Amabile. Mr. Morganstein does not challenge the correctness of that ruling, but insists that it was applied only to him, and that Ms. Goldin and Dr. Jaffe were free to reference Dr. Amabile's earlier report. The references he cites, however, simply point to the fact of Dr. Amabile's involvement and that her report, as a matter of procedural history, was relied on in the initial custody determination. Mr. Morganstein cites to nothing in the record suggesting that Ms. Goldin was allowed to rely on the substance of Dr. Amabile's report as support for her post-decree position regarding Mr. Morganstein's parenting time. The record simply fails to support the claim that the order *in limine* regarding Dr. Amabile was enforced unfairly.

¶ 51    Mr. Morganstein's argues proper procedures were not followed when the trial court reduced the parties' summer vacation time from three to two weeks each so that J.M. could attend summer camp. These arguments focus on the trial court's initial ruling on April 14, 2021, which was later incorporated into its ruling on August 23, 2022. Mr. Morganstein maintains, for example, that the court ruled on Ms. Goldin's request for this change in just two days, denying him an opportunity to be heard, and that the court did not first make a requisite finding of serious endangerment.

¶ 52    However, any challenge to the trial court's interim orders regarding parenting time are moot, as those orders were superseded by the August 23, 2022, order. See *Maroney v. Maroney*, 109 Ill. App. 2d 162, 167 (1969) (noting that "[t]he question of the propriety of [a] temporary order is *** moot" where "[t]he temporary order has been superseded by [a] permanent order entered by the court ***."). And Mr. Morganstein does not argue that he was denied due process or that the requisite findings were not made in connection with the court's August 23, 2022, order.

¶ 53 In sum, Mr. Morganstein has presented no basis on which we may overturn the trial court's carefully considered rulings regarding his overnight parenting time, or the amount of summer vacation time allotted to the parties.

¶ 54 D. Mr. Morganstein's Contributions to Fees Incurred by Court-Ordered Professionals

¶ 55 Mr. Morganstein also argues that the trial court erroneously refused to accept his valid waiver of court-ordered fees and costs and improperly held him responsible for paying (1) half of J.M.'s court-ordered therapy with Dr. Evie Klein (order entered on September 16, 2019), (2) the full expense of court-ordered joint therapy sessions with Dr. Klein for Mr. Morganstein and J.M. (order entered on January 16, 2020), (3) half of Dr. Jaffe's retainer and various other fees associated with Mr. Jaffe's work in this case (orders entered on December 18, 2019, and December 9, 2021), (4) costs and fees associated with the appointment of a parenting coordinator to assist the parties in resolving future disagreements (order entered on August 23, 2022), and (5) the GAL's most recent fees (same).

¶ 56 Mr. Morganstein's challenges to several of these categories of fees are not properly before us. As noted above, our jurisdiction over this appeal is pursuant to Illinois Supreme Court Rule 304(b)(6) (eff. March 8, 2016), which provides an immediate appeal from the modification of a custody or allocation of parental responsibilities judgment. Absent a written finding pursuant to Rule 304(a) or some other basis for appellate jurisdiction of interlocutory orders, we believe our jurisdiction is limited to the trial court's August 23, 2022, order suspending Mr. Morganstein's overnight parenting time and other rulings listed in Mr. Morganstein's notice of appeal that are incidental to that order.

¶ 57 We believe the court's January 16, 2020, order requiring Mr. Morganstein to pay the full cost of joint therapy sessions with J.M. *is* incidental to the court's final ruling on the issue of

overnight parenting time. That order was entered on the same day that the court granted Ms. Goldin's request to suspend Mr. Morganstein's overnight parenting time on Sunday nights and the joint therapy sessions appear to have been prompted by the same difficulties that caused the court to appoint Dr. Jaffe and hold the trial that resulted in its August 23, 2022, order. The same cannot be said of the court's earlier September 16, 2019, order directing the parties to split the cost of J.M.'s individual therapy, and Mr. Morganstein has not suggested any other basis for our jurisdiction to review that order.

¶ 58    Mr. Morganstein's challenges to the parenting coordinator and GAL fees also appear to be premature. Where the trial court has not entered a final order determining the amount of a fee award, issues relating to that award are not ripe for review. *General Motors Corp. v. State Motor Vehicle Review Board*, 361 Ill. App. 3d 271, 290 (2005). Here, the record does not reflect that a parenting coordinator has even been appointed. Nor does it indicate that the GAL filed a fee petition or was awarded fees following the court's August 23, 2022, order.

¶ 59    We therefore consider Mr. Morganstein's arguments only as they relate to the court's orders requiring him to pay for the joint therapy sessions with Dr. Klein and Dr. Jaffe's fees. Mr. Morganstein argues that he was exempt from these fees under section 5-105 of the Code of Civil Procedure (Code). 735 ILCS 5/5-105 (West 2018). Under that section, indigent persons are entitled to a full waiver of "fees, costs and charges"—defined as "charges for participation in, or attendance at, any mandatory process or procedure, including but not limited to *** counseling [and] evaluation," as well as "guardian *ad litem* fees" and "all other processes and procedures deemed by the court to be necessary to commence, prosecute, defend, or enforce relief in a civil action"— and may sue or defend an action without incurring such expenses. *Id.* § 5-105(b)(1). Individuals satisfying other criteria are eligible for partial waivers. *Id.* § 5-105(b)(2). Here, Mr. Morganstein

applied for a full waiver based on his income and expenses on June 20, 2018, and the trial court granted his application the same day.

¶ 60    In our initial decision issued in this appeal, we agreed with Ms. Goldin that Mr. Morganstein's fee waiver expired on June 20, 2019, well before any of the expenses he complains of were imposed. Section 5-105(f) of the Code now provides that a waiver expires one year after it is issued. 735 ILCS 5/5-105(f) (West 2022).

¶ 61    We granted Mr. Morganstein's petition for rehearing under Rule 367 (eff. Nov. 1, 2017), however, and we acknowledge that our understanding of the applicable law was incorrect. Subsection (f) was added by amendment on July 1, 2019. P.A. 100-987, 905-100, eff. July 1, 2019. The version of the statute in effect when Mr. Morganstein's application for a fee waiver was granted contained no such provision, and indeed his waiver order states that he "may participate *in this case* without payment of fees, costs, or charges." (Emphasis added.)

¶ 62    Ms. Goldin now argues in her response to the petition for rehearing that this amendment to section 5-105 of the Code is procedural in nature and was thus intended to be applied retroactively. We disagree. Our supreme court has adopted the approach taken by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), for determining whether an amendment to a statute applies retroactively. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 39 (2001). Where there is no express indication of legislative intent, the relevant question is whether retroactive application " 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' " *Id.* at 38 (quoting *Landgraf,* 511 U.S. at 280). Our court has acknowledged, however, that a general savings clause in section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2000)) "represents a clear legislative directive as to the temporal reach of statutory amendments

19

and repeals." *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003). Under that provision, amendments that are procedural in nature may be applied retroactively, while those that are substantive may not. *Id.* Thus, although Illinois follows the two-step inquiry set out in *Landgraf*, our savings clause means we need never proceed beyond the first step. *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 44.

¶ 63    Importantly, underlying this whole framework is a presumption *against* statutory retroactivity. *Commonwealth Edison*, 196 Ill. 2d at 37. Laws do not apply retroactively unless the legislature clearly intended for them to. *Id.* We are not at all persuaded by Ms. Goldin's unsupported assertion that the July 2019 amendment to section 5-105 is "a mere procedural change" that applies retroactively. The statute gave Mr. Morganstein, the holder of a valid fee waiver, the substantive right to be free of costs and fees imposed on him as a party to this litigation. Retroactively stripping him of that right one year from the issuance of his fee waiver, when the fee waiver that he was granted provided no notice that he needed to reapply annually, would certainly impair that right. Ms. Goldin's suggestion that there is no impairment because Mr. Morganstein has already tendered some or all of the imposed amounts ignores the question of whether or not those financial burdens should in fact have been imposed on him.

¶ 64    Ms. Goldin also asserts that Mr. Morganstein's financial situation has changed since he was given the waiver, but she did not move the trial court to vacate the fee waiver on that basis. She did move to vacate the waiver, several months after it was issued, on the grounds that Mr. Morganstein had misrepresented his financial situation, and the trial court denied that motion on January 28, 2019. The place for further challenges to the fee waiver was in the trial court, not on appeal in this court. See *Rawlings v. Illinois Department of Law Enforcement*, 73 Ill. App. 3d 267, 279 (1979) (noting that a fee waiver may be challenged by showing "either that the information

given was significantly erroneous or that the financial condition of the applicant has significantly improved in such a manner that the applicant would no longer be entitled to file as a poor person"). Similarly, the fact that Mr. Morganstein later filed a new application for a fee waiver in September 2022 has no effect on the validity of his original fee waiver, which was still in effect when the expenses at issue were imposed.

¶ 65    Finally, Ms. Goldin argues that Mr. Morganstein forfeited his right to challenge these fees by not filing the motion for reconsideration he was granted leave to file by the court. Ms. Goldin is correct that the court granted Mr. Morganstein, who was apparently required to obtain leave of court to file motions, leave to file a motion to reconsider the court's December 18, 2019, order. The court warned Mr. Morganstein in that order that he could be liable for Ms. Goldin's legal fees in connection with such a motion if he was not successful, and he ultimately never filed a motion to reconsider. On February 19, 2020, the court entered an order stating that Mr. Morganstein's payment of half of Dr. Jaffe's retainer would be confirmed on February 25, 2020, and Mr. Morganstein filed no additional objection to that court-ordered fee.

¶ 66    Ms. Goldin cites no authority suggesting a motion to reconsider was necessary under these circumstances, however, nor are we aware of any. Mr. Morganstein objected to the imposition of these fees based on a fee waiver that, pursuant to the version of the statute in effect at the time he obtained the waiver, exempted him from the payment of certain mandatory costs and fees for the duration of the litigation. We see no reason why he was required to do anything else to preserve those objections for appeal. See *Cardona v. Del Granado*, 377 Ill. App. 3d 379, 385 (2007) (observing that "there is no requirement that a litigant file a motion to reconsider before filing an appeal"); *In re S.A.M.*, 2021 IL App (3d) 210066, ¶ 19 (noting that a "posttrial motion is not necessary to preserve issues in an appeal from a bench trial").

¶ 67 Ms. Goldin's argument that Mr. Morganstein's fee waiver expired before the orders awarding the fees he challenges here were entered thus fails. We remand to the trial court to reevaluate the fees and costs related to the court-ordered joint therapy sessions with Dr. Klein and Mr. Jaffe's compensation to determine if all or part of those expenses are ones for which the holder of a fee waiver under section 5-105(a)(1) of the Code is exempted from paying.

¶ 68 E. Ms. Goldin's Attorney Fees

¶ 69 Mr. Morganstein also asks this court to vacate all attorney fee awards made to Frumm & Frumm, Ms. Goldin's attorneys. The court ordered such fees on July 16, 2019, October 7, 2020, March 9, 2021, and October 12, 2021. In each of those orders, the trial court's award of fees was either an interim award of attorney fees made pursuant to section 508(a) of the Act (750 ILCS 5/508(a) (West 2018)), or the result of Mr. Morganstein's failure to comply with the court's prior orders, necessitating Ms. Goldin filing a petition for rule to show cause why he should not be held in contempt of court. Section 508(b) of the Act provides for an award of fees where the petitioner in such proceedings is successful. *Id.* § 508(b).

¶ 70 As Ms. Goldin points out, these orders are not among the eight other orders listed in Mr. Morganstein's notice of appeal. Our supreme court has made clear that "[a] notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal." *General Motors Corp. v. Pappas*, 242 Ill.2d 163, 176 (2011); see also Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017) (providing that a notice of appeal "shall specify the judgment or part thereof or other orders appealed from," as well as "the relief sought from the reviewing court"). Although we can overlook deficiencies relating only to the form of a notice of appeal where we are satisfied that the appellee has not been prejudiced, we cannot say here that Mr. Morganstein's notice fairly and adequately advised Ms. Goldin that he would be challenging

the rulings made in these four additional orders. Those orders span more than a two-year period and do not appear to be directly related to the order limiting parenting time that is the basis for our jurisdiction in this appeal.

¶ 71    Although it was not apparent from his notice of appeal that Mr. Morganstein would be challenging more than one order entered on August 23, 2022, he also challenges the trial court's final award of fees to Frumm & Frumm, which the parties agree was made by separate order on that date, following the court's order ruling on the issue of parenting time. Although that order is incidental to the parenting time order, it does not appear in the record on appeal. Nor is there a transcript or certified bystander's report providing the court's reasons for the award. Because a "decision to award or deny fees will be reversed only if the trial court abused its discretion" (*In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005)), where the record does not reflect the court's findings or the basis for its decision, we must presume that its decision was correct (*Clay v. County of Cook*, 325 Ill. App. 3d 893, 900 (2001)). That is the case here.

¶ 72            F. Mr. Morganstein's Motion for Rule 219(c) Discovery Sanctions

¶ 73    Mr. Morganstein also argues the trial court erred by denying his motion for discovery sanctions. Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) authorizes courts to impose a variety of sanctions when a party unreasonably fails to comply with the discovery rules, or an order entered pursuant to those rules. "The decision to impose a particular sanction under Rule 219(c) is within the discretion of the trial court and, thus, only a clear abuse of discretion justifies reversal." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998).

¶ 74    Mr. Morganstein does not appear to have actually filed a motion for discovery sanctions, however. As Ms. Goldin points out, the trial court entered an order on November 14, 2018, requiring him to obtain court approval before filing any motions or petitions. On June 28, 2022,

Mr. Morganstein sought leave to file a "relevant petition" including, among other things, a request for sanctions. That request was apparently denied in a separate order entered on August 23, 2022. Again, however, there is nothing in the record—no order or transcript—evidencing that ruling or providing the court's reasons for making it. It is Mr. Morganstein's burden to present a sufficiently complete record supporting his claim of error (*Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984)), and in the absence of such a record on appeal, there is no basis upon which we may conclude that the trial court abused its discretion here (*id.* at 392) in refusing to allow Mr. Morganstein to file such a motion or in denying such a motion if it was filed.

¶ 75    In addition, Mr. Morganstein has made no cogent argument in support of an award of discovery sanctions. He complains that Ms. Goldin took screen shots showing the condition of his home during his FaceTime calls with J.M. and that this violated section 26-4 of the Criminal Code of 2012 (Criminal Code), which makes it "unlawful for any person to knowingly make a video record or transmit live video of another person in that other person's residence without that person's consent" (720 ILCS 5/26-4(a-5) (West 2020)), but does not explain how taking a screenshot is the equivalent of making a video record or transmitting a live video. He argues that other photographs of his home taken with J.M.'s school iPad, in violation of J.M.'s pledge to his school that he would only use the iPad's camera and recording tools for educational purposes, prove that Ms. Goldin contributed to the delinquency of a minor, in violation of section 12C-30 of the Criminal Code (720 ILCS 5/12C-30 (West 2020)). Even if this were true, Mr. Morganstein does not explain how the violation of a pledge to the school would make J.M. a delinquent minor, defined as one who has violated or attempted to violate a federal or state law or municipal ordinance. *Id.* § 12C-30(c). Nothing in these arguments suggests that Ms. Goldin was guilty of discovery violations.

¶ 76    Along the same lines, Mr. Morganstein argues that Ms. Goldin violated Illinois Supreme Court Rule 218 (eff. Oct. 1, 2021), establishing procedures for case management conferences, and Rule 219 (eff. July 1, 2002), concerning refusals to comply with case management orders, when she filed an emergency motion after the close of discovery that attached, among other things, the photographs of Mr. Morganstein's home. While this motion may reflect the frenzy in which both parties appear to have litigated this matter in the circuit court, it certainly does not support a claim that Ms. Goldin violated Illinois Supreme Court Rules governing discovery or case management.

¶ 77                G. Ms. Goldin's Request for Rule 375(b) Sanctions

¶ 78    Finally, Ms. Goldin has asked this court to award her sanctions under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994)—on the basis that this appeal is frivolous and was not taken in good faith—and to bar Mr. Morganstein from pursuing further appeals without prior leave of this court. We do not believe that such measures are necessary or appropriate at this juncture. Although Mr. Morganstein has certainly included unsuccessful arguments in his appeal, we do not believe that his core challenge to the trial court's reduction of his parenting time was frivolous or that the appeal itself was taken for an improper purpose. And although, as Ms. Goldin points out, Mr. Morganstein was unsuccessful in his earlier appeals too, the panels of this court that decided those matters did not believe that he was filing frivolous appeals either. See, *e.g.*, *In re Marriage of Goldin*, 2019 IL App (1st) 180788-U, ¶ 88 (noting that the court "disagree[d] with [Mr. Morganstein's] preferred outcome," but "[did] not find his appeals frivolous").

¶ 79    It is evident that Mr. Morganstein loves his son deeply and that his actions throughout this protracted litigation stem from a genuine desire to preserve his relationship with J.M. We hope that now, with the court-appointed parenting coordinator in place to address the parties' disputes in the first instance, Mr. Morganstein and Ms. Goldin will be better equipped to direct the

significant time and resources they have spent on court filings and proceedings over the past ten years toward better communication with each other and the building and strengthening of their relationships with J.M., who has spent the majority of his life embroiled in his parents' disputes.

¶ 80                                    IV. CONCLUSION

¶ 81    For all of the above reasons, we affirm the trial court's August 23, 2022, order suspending Mr. Morganstein's overnight parenting time and limiting the parties to two nonconsecutive weeks of summer vacation, as well as its orders awarding Ms. Goldin attorney fees, and denying Mr. Morganstein's motion for discovery sanctions. We also deny Ms. Goldin's request for sanctions. We reverse the trial court's orders requiring Mr. Morganstein to pay the full amount of court-ordered joint therapy sessions for him and J.M. with Dr. Klein and for his half of Mr. Jaffe's compensation and remand for the court to determine if all or part of those expenses are ones for which the holder of a fee waiver under section 5-105(a)(1) of the Code is exempted from paying.

¶ 82    Affirmed in part, reversed in part, and remanded with directions.